**FILED**
September 24, 2024 04:07 PM
ST-2009-CV-00167
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

SHIRLEY HODGE, )
)
          Petitioner, )
)
    vs. )
)
DAAS, INC. d/b/a FOOD CENTER & )
COMMISSIONER OF DEPARTMENT OF )
LABOR, )
          Respondents. )
)

CASE NO. ST-2009-CV-00167

PETITION FOR WRIT OF REVIEW

**Cite as 2024 V.I. SUPER 35**

## MEMORANDUM OPINION AND ORDER

¶1.    **THIS MATTER** comes before the Court upon Petitioner Shirley Hodge's ("Hodge" or "Petitioner") Petition for Writ of Review filed on April 6, 2009. The petition seeks relief from the Virgin Islands Department of Labor's ("DOL") Final Order dated March 13, 2009, dismissing Petitioner's wrongful discharge complaint. Having considered all applicable law, the parties' briefs, and matters of record, the Court hereby affirms the DOL's Final Order.

### I.    FACTUAL AND PROCEDURAL HISTORY

¶2.    On February 27, 2007, Hodge filed a complaint with the DOL alleging that she had been wrongfully terminated from her employment with Daas Inc. d/b/a Food Center ("Food Center") in violation of the Virgin Islands Wrongful Discharge Act ("VIWDA"), 24 V.I. C. § 76-79. A hearing on Hodge's complaint was held on October 20, 2008, before the DOL's Administrative Law Judge ("ALJ")[1] and he rendered a decision on March 13, 2009.[2]

---

[1] ALJ and Commissioner are used interchangeably in this opinion. Pursuant to 24 V.I. R. & Regs § 77-1 (c) and (d), "Commissioner" means the Commissioner of Labor, Government of the Virgin Islands, or the designee of the Commissioner, and "Designee" means the Administrative Law Judge of the Virgin Islands Department of Labor.

[2] The hearing before the ALJ on October 20, 2008, was transcribed. The transcript and exhibits were filed with the Court on September 25, 2009.

¶3.     On April 6, 2009, Hodge timely filed her petition for writ of review, asking the Court to review and vacate the DOL's March 13, 2009, Order in *Shirley Hodge v. Daas, Inc. d/b/a Food Center*, (WD-044-2007-STT).[3] By Amended Order entered August 26, 2009, the Court granted Petitioner's writ of review and issued a briefing schedule.[4] On April 12, 2010, Petitioner filed her brief addressing the merits of her claim.[5] The Commissioner of Labor ("Commissioner") filed a response on May 13, 2010.[6] By Order dated January 25, 2012, the Court ordered Petitioner to provide legal support for the Court's authority to modify or set aside findings of fact made during an administrative hearing and to cite the specific portions of the administrative hearing transcript that constitute due process violations. In response to the Court's Order, Petitioner filed her Memorandum of Law on February 3, 2012. Following the Court's January 17, 2024 Order, Food Center filed its brief discussing the merits of Hodge's claims on January 26, 2024, and the DOL submitted its brief on January 31, 2024. Hodge filed her verified reply brief on March 6, 2024.

¶4.     Based on the evidence and testimony presented at the hearing before the ALJ, Food Center is a supermarket in St. Thomas, Virgin Islands. In December 2001, Hodge began her employment with Food Center as a cook. Her primary duties consisted of preparing food for customers. Typically, her hours of work were from 7:00 a.m. to 5:00 p.m., six days per week, Thursday through Tuesday, with Wednesdays off. Hodge was paid an hourly rate of $8.00 per hour, and if she worked more than 40 hours per week, her hourly rate increased to $12.00 per hour. Food Center

---

[3] 24 V.I.R.§ Regs. 77-73.

[4] The briefing schedule was directed only to the Petitioner and the Commissioner of Labor.

[5] A review of the record shows that for a variety of reasons there were at times extended periods of dormancy in this matter. The Commissioner of Labor filed a notice of appearance on June 18, 2009, and Attorney Derek M. Hodge filed a notice of appearance on behalf of Food Center on July 30, 2009. Upon information and belief, Attorney Derek Hodge passed away a few years after the initiation of this writ of review. Food Center's new counsel entered an appearance on September 18, 2023.

[6] The Commissioner filed motions to dismiss on October 26, 2009, and May 3, 2010.

recorded employees' time and attendance using timecards and a punch clock. The punch clock and timecard rack were located at the front of the store, next to the customer service desk. Each employee was provided with a timecard weekly, and employees were required to record their arrival and departure to and from work by punching the assigned timecard. At the time of hire, employees were made aware that if they leave work to take care of personal business, they must punch out and would not be compensated for the time spent away from work.

¶5. Ahed Daas ("Daas"), President of the Food Center, was responsible for reviewing employees' timecards and otherwise monitoring the employees' time and attendance. He testified that a few months before Hodges's termination, he noticed on several occasions that someone had punched a timecard that had no employee name on it, was not attached to any employee timecard, and had time-stamped in and out entries during the workday ("blank timecards"). Daas claimed that after receiving several blank timecards, —timecards with punch entries but no name of the card— he brought it to the attention of his front-end manager, Joanne Donovan ("Donovan"), who was stationed at the customer service desk approximately five to six feet away from the punch clock. Dass asked her to observe the employees comings and goings so that they might determine which employee was punching the blank timecards.

¶6. According to Donovan, she observed Hodge punching out, heard the clicking sound of the punch clock, and then saw Hodge leave the building. After Hodge left the building, Donovan went to the timecard rack and located Hodge's timecard with her name. She noticed that a punch-out entry was not recorded on her assigned timecard. Donovan then reviewed the blank cards in the rack and found that another card, a blank card with no employee name on it, recorded the time that Donovan observed Hodge punching out. Donovan reported what she discovered to Daas. Daas

also claims that he watched Hodge on the camera punching out, and after she left, he went to the timecard rack, looked at her assigned card, and observed that Hodge did not punch her regular card but punched a blank card. Daas explained that at the beginning and end of the workday, Hodge did not punch the blank timecard but punched the timecard that had her name on it. Daas testified that he found it suspicious that when Hodge leaves during the workday, she cannot find her card and punches in and out on a blank card, but all of a sudden, at the end of the day, she punches out using her regular card with her name on it.

¶7. While employed with Food Center, Hodge was in the habit of leaving work between 2:30 p.m. and 3:00 p.m. on weekdays to pick up her son from school. Hodge's timecard for the week ending February 18, 2007, indicates that on Thursday, February 15, 2007, Hodge, using the timecard with her name, punched in at 7:59 a.m. and punched out at 6:30 p.m. That same day, when Hodge left Food Center to perform her personal errands, she punched out at 2:39 p.m. and punched in at 3:57 p.m. using a blank card that did not bear her name. Similarly, Hodge's timecard for the week ending February 25, 2007, shows that on Friday, February 23, 2007, she punched in at 7:16 a.m. and punched out at 6:28 p.m. That same day, Hodge again used a blank timecard and recorded punch-in and punch-out time entries of 3:45 p.m. and 4:34 p.m., respectively.

¶8. Hodge testified she knew she was supposed to punch out when leaving work during the workday. She admitted to punching on a blank card on February 23, 2007, her birthday. Hodge stated that when she went to the timecard rack to punch out in the afternoon of February 23, 2007, she looked for the assigned timecard that she had punched earlier that morning, but it was not in the rack. Hodge claimed she asked her immediate supervisor Oscar Garcia ("Garcia") and Donovan, who were nearby, where her card was. Hodge stated that they responded that they didn't

know. Donovan testified that she does not recall having any such conversation with Hodge. Hodge professed that since she could not find her regular card, she took a blank card, punched that card, and went to pay her phone bill. When she returned from her errands, she still did not see her card, so she punched the same blank card she had punched earlier. At the end of the workday, her regular card was in the rack, so she punched the regular card and stapled her regular card and the blank card together.

¶9.      When asked if she had ever missed her card before, Hodge admitted that she had, but on those occasions, she would ask one of the managers for her missing card, and they would give her the regular card with her name to punch out. Hodge also admitted to punching a blank timecard on other occasions. She stated she could not recall using a blank card the week before, but if she had, she would have taped the blank card that she punched to her regular card. On the morning of February 24, 2007, Daas terminated Hodge for dishonesty for failing to record on her assigned timecard such periods during the workday when she was not at work.

¶10.      On February 27, 2007, Hodge filed a written complaint with the DOL alleging she had been wrongfully discharged from her employment with Food Center in violation of the VIWDA. On October 20, 2008, the matter came before the DOL's ALJ for consideration. The ALJ issued a written decision on March 13, 2009, dismissing Hodge's complaint and finding that Food Center lawfully terminated her for dishonesty.[7]

---

[7] The Supreme Court of the Virgin Islands has held that in a case brought under the Virgin Islands Wrongful Discharge Act ("VIWDA"), the plaintiff "need only prove that the defendant was his employer and that he was discharged, while the defendant must affirmatively prove that the plaintiff had been discharged for a permissible ground [set forth in 24 V.I.C. § 76]". *LIAT (1974), Ltd. v. Cherubin*, 77 V.I. 472, 482 (V.I. 2022).

## II.    LEGAL STANDARD

¶11.    Title 24 V.I.C. § 70 states that "[a]ny person aggrieved by a final order of the Commissioner granting or denying in whole or in part the relief sought may obtain a review of such order by filing in the Superior Court . . . within 30 days of its issuance, a written petition praying that such decision of the Commissioner be modified or set aside." 24 V.I.C. § 70(a). Because the ALJ issued the decision on March 13, 2009, and Hodge filed her petition for writ of review on April 6, 2009, her appeal of the DOL's decision is timely, and this Court has jurisdiction over the petition. *Mercer v. Bryan*, 53 V.I. 595, 599 (V.I. 2010); *Worldwide Flight Servs. v. Gov't of the V.I.*, 51 V.I. 105, 108-10 (V.I. 2009); *Pichardo v. Comm'r of Labor*, 49 V.I. 447, 450-51 (V.I. 2008).

¶12.    In reviewing the decision of the ALJ in a wrongful discharge case, the court must determine whether the administrative decision was supported by substantial evidence on the record. 24 V.I.C. § 70(b). Provided the factual findings of the ALJ are supported by substantial evidence, such findings are conclusive. *Id.* At the hearing before the ALJ, the respondent bears the burden of persuading the ALJ that, by a preponderance of the evidence, the discharge was lawful. 24 V.I.R. & Regs § 77-59. However, on review, it is the petitioner who bears the burden of proving that the decision of the ALJ was not supported by substantial evidence on the record. *Allen v. Virgin Islands Enviro Sys. Control, Inc.*, 2009 WL 10742428, *2 (V.I. Super. Ct. 2009).

¶13.    The Superior Court applies the traditional plenary standard of review in reviewing the ALJ's conclusions of law. *Bryan v. Fawkes*, 61 V.I. 201, 225-230 (V.I. 2014); *see also Charles v. Kelly's Cleaning Services*, 2024 VI SUPER 2U, P13 (V.I. Super. Ct. 2024) ("[B]ecause the Legislature did not require a specific standard of review under § 70(b) for the Department

of Labor's conclusions of law, the Court reviews those determinations *de novo*."). On questions of

law, the court reviews *de novo* whether the ALJ committed a mistake of law requiring the decision

to be reversed or vacated.

¶14.    Generally, when deciding a petition under Section 70(a), the Superior Court is precluded

from considering objections not raised before the ALJ. Thus, if a party fails to make an objection

before the Commissioner, such objection is deemed waived "unless the failure or neglect to raise

such objection is excused because of extraordinary circumstances." 24 V.I.C. § 70(b); 24 V.I.R. &

Regs. § 77-57.

## III.    DISCUSSION

¶15.    As grounds for review, Hodge claims that:

1.  The Department of Labor committed errors of law when the Administrative Judge . . . failed to base his Decision on the substantial evidence in the record as a whole as a basis of his opinion.
2.  The Administrative Law Judge failed to consider relevant exculpatory evidence offered by the Petitioner in support of her claim.
3.  The ALJ was biased against the Petitioner in his conduct of the hearing and failed to consider crucial testimony by the Petitioner at the hearing which is on record, and as a substantial right of the Petitioner.
4.  The ALJ failed to consider the record as a whole to establish a violation of the wrongful discharge act under the statutory nine grounds set forth in 24 V.I.C. Tit § 76.
5.  The ALJ was biased in that he ignored the Petitioner's testimony regarding punching the blank card due to the absence of her assigned card on departure and arrival.[8]

Although Hodge asserts five grounds for her writ of review, all relate to two core issues: (1)

whether the ALJ's decision is supported by substantial evidence and (2) whether the ALJ exhibited

bias while presiding over Petitioner's wrongful discharge hearing.

---

[8] April 6, 2006, Notice of Appeal

## A. Whether the ALJ's Decision is Supported by Substantial Evidence

¶16.    Hodge argues that under the substantial evidence standard, the record as a whole does not reflect sufficient evidence that would lead a reasonable mind to conclude she was lawfully terminated. The court disagrees. The VIWDA provides that an employer may dismiss any employee who is "dishonest." 24 V.I.C. § 76(a)(8).[9]   Here, substantial evidence on the record supports the ALJ's finding that Food Center lawfully discharged Hodge for dishonesty.

¶17.    "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion; evidence beyond a scintilla." *V.I. Coalition of Citizens with Disabilities, Inc. v. Gov't of the V.I.*, 47 V.I. 315, 321 (V.I. Super. Ct. 2005).   An administrative decision lacks substantial evidence if no reasonable factfinder could make such a finding based on the administrative record. *Charles v. Kelly's Cleaning Services*, 2024 VI SUPER 2U at P28, 16; Codrington v. *GME Dospiva, LLC*, 2023 VI SUPER 80U, P12 (V.I. Super. Ct. 2023) (citing *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003)).

---

[9] 24 V.I.C. § 76 provides:

    **(a)** Unless modified by union contract, an employer may dismiss any employee:

        **(1)** who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

        **(2)** whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

        **(3)** whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

        **(4)** who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

        **(5)** who performs his work assignments in a negligent manner;

        **(6)** whose continuous absences from his place of employment affect the interests of his employer;

        **(7)** who is incompetent or inefficient, thereby impairing his usefulness to his employer;

        **(8)** who is dishonest; or

        **(9)** whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

*See also* 24 V.I. R. & Regs. § 77-21, which permits a party who has been discharged from employment in violation of the VIWDA to file a written complaint with the Commissioner of the Department of Labor.

¶18.    It must be noted, however, that "substantial evidence allows for the possibility of drawing two inconsistent conclusions." *V.I. Coalition of Citizens with Disabilities, Inc.*, 47 V.I. at 320. As long as an administrative decision is supported by substantial evidence, it should not be disturbed simply because it might also support a contradictory or different conclusion. *Id.* Only if the record cannot support the ALJ's findings is reversal warranted. Thus, the reviewing court must affirm the findings of the ALJ if the evidence presented is enough for a reasonable mind to accept as adequate to support the conclusion reached by the ALJ, even if the evidence could potentially support an opposite conclusion as well. *Id.* at 321. When the Court applies the substantial evidence test, it is required to consider the whole record. *Charles v. Kelly's Cleaning Services*, 2024 VI SUPER 2U at P28, 17. Also, when the Court reviews the administrative record for the lack of or adequacy of substantial evidence, it must take into account that the ALJ had the opportunity to assess the credibility of witnesses and consider the weight of the evidence in the first instance. *Id.*

¶19.    Inasmuch as the factual findings of the ALJ, in this instance, are supported by substantial evidence, they are binding on this reviewing court. Daas noticed that one of his employees was punching in and out during the workday on blank timecards. After receiving several time-stamped timecards with no names, he brought it to the attention of his front-end manager, Donovan, who was stationed at the customer service desk a few feet from the punch clock. He elicited her assistance in determining which employee was punching the blank timecards. According to Donovan, she observed Hodge punching out, heard the clicking sound of the punch clock, and watched Hodge leave the building. Donovan testified that she then checked the timecard rack where she located Hodge's timecard with her name on it and noticed that the punch-out entry was not recorded on her timecard. Donovan then reviewed the blank cards in the rack and found another

card, a blank card with no employee's name on it. The time when Donovan saw Hodge leaving work was recorded on the blank card.

¶20.    Dass provided similar testimony. He also testified that at the beginning and end of the workday, Hodge did not punch the blank timecard but punched the timecard that had her name on it. Daas found it suspicious that when Hodge leaves during the workday, she cannot find her card and punches in and out on a blank card, but at the beginning and end of the day, she punches in and out using her regular card. Hodge's timecards and the timestamped blank timecards for the week ending February 18, 2007, and February 25, 2007, corroborate Daas and Donovan's observations that Hodge punched in at the beginning of the workday and punched out at the end of the workday on her assigned timecard but when she leaves during the workday to pick up her son or to run her errands she punches in and out on a blank time card.

¶21.    Hodge's testimony provides substantial evidence for the ALJ findings. Hodge testified she knew she was supposed to punch her timecard when leaving work. She admitted that she punched in and out on her assigned timecard at the beginning and end of the workday on February 23, 2007, but punched in and out on a blank card when she left work to pay her phone bill in the afternoon. Hodge claimed that when she could not find her regular timecard in the rack, she would ask one of the managers for her missing card, and they would give her the regular card with her name to punch in and out. Daas and Donovan testified that on February 15 and February 23, 2007, Hodge did not ask them or any other manager or supervisor for her assigned timecard, and she did not inform them that she had punched in and out on a blank card. Hodge admitted that she punched a blank card on February 23, 2007, when she left Food Center to pay her phone bill. Donovan's testimony contradicts Hodge's testimony that she punched a blank timecard because she could not

find her assigned timecard. Donovan testified that Hodge's assigned timecard was in the rack next

to the time clock when she checked the rack immediately after Hodge punched out and left Food

Center.[10]

¶22.     Hodge also admitted to punching a blank timecard on more than one occasion. She claims

she could not recall using a blank card the week before, but if she had done so at that time or any

other occasion, she would have attached the blank card to her regular punch card.[11] The ALJ found

Hodge produced no evidence to support this claim. In an effort to counter the ALJ's finding that

Hodge  produced no evidence to support her claim that on February 23, 2007, she stapled the blank

card to her assigned time card, Hodge, in her March 6, 2024, reply brief, claims that the "DOL did

---

[10] Donovan testified as follows:

> A.   Well, I can't remember the dates, really, but that particular day that Daas called me and tell me check on it, she did punch, but it was not her card. Hr'g Tr. 53:5-7
>
> . . .
>
> So when I did check, we looked at her regular card that is on the left, and we saw where she didn't punch – use that.  But then while checking down the record, the timecards, we saw this empty one, and that's the same exact time that Daas did tell me to check. And that's the time that she did punch out on that empty card with no name on it. Hr'g Tr. 54:1-8
>
> . . .
>
> A.   I mean with the punching of – when she didn't punch her right card and punched a blank card.
> Q.   Did you see Ms. Hodge do that?
> A.   That day, yeah, because Daas told me to double check after she left. Hr'g Tr. 61:13-17

[11] In an attempt to refute Food Center's claim that she was dishonest, Hodge explained that she would attach the blank timecard to the timecard with her name.  She stated as follows:

> A.   . . . The afternoon when I was leaving, my regular card was in the rack. What I did, I took the regular card and I punched out on the regular card and I took the other card and I put a *clip* on the other card on the back of mine and I left it there.  Hr'g Tr. 120:6-12

Later in her testimony, while being questioned by Food Center's attorney, Hodge stated that:

> Q: The week before, did there come a time that you were trying to find your card to punch out and you couldn't find it?
> A.   I can't recall. If it is so, whatever - - if I punched and I used another card, I always put the other card. I *put piece of tape* on top of it.  I do that. I can't recall but if it is so, I will take a tape and I will tape it together. Hr'g Tr. 133:23-134:5

She further stated:

> A.   I am going to repeat myself to you again.  I took the old card that I had, what I punched in the morning on, right. I took that alone with the one I punched in the afternoon and I stapled it onto a clip-on and I stuck it in the rack and left it there. Tr. at 135:15-19

Hodge appears to be unclear whether she clipped, taped or stapled the cards together.

not acknowledge, inquire about, or even consider the glaring absence of the actual punch card(s)."[12] She also claims that a "copy of the time card submitted by the employer reflects the apparent staple holes" and corroborates her testimony. [13] Attached to Hodge's reply is a purported copy of the punch card with "highlighted emphasis on the areas of the punch card where Hodge alleges that she made the staple holes."[14] The time card attached to the reply pertains to the pay period ending February 18, 2007.

¶23.    At the hearing before the ALJ, Petitioner did not object to copies of the timecard being admitted as evidence.[15] Any objection concerning the use of copies of the timecards as exhibits was waived when Petitioner acquiesced in their admission. 24 V.I.C. § 70(b).[16] The Petitioner did not bring to the ALJ's attention the purported staple marks on the timecard for the period ending February 18, 2007. Hence, this Court will not consider Petitioner's new claim that there were staple marks on one of the timecards.[17] Moreover, at no time during the hearing did Hodge testify that she stapled the blank and assigned timecards for the pay period ending February 18, 2007, together.

---

[12] Pet'r's Reply Brief at 7.

[13] *Id*. at 7-8.

[14] *Id*. at 8.

[15] Hr'g. Tr. 49-50.

[16] Title 24 V.I.C. § 70 specifically states that "[n]o objection that has not been urged before the Commissioner shall be considered by the Court unless the failure or neglect to urge such objection is excused because of extraordinary circumstances." Petitioner also claims in her March 6, 2024, reply brief that Daas failed to turn over her personnel file, the original punch cards, and camera footage he relied upon in making his decision to terminate her. A review of the record shows that Petitioner at no time raised any discovery issues before the ALJ. 24 V.I. R. & Regs. § 77-41 allows a party to "initiate discovery . . . at any time after service of the complaint" and "early enough to permit its completion prior to the date set for the hearing." Petitioner's claim that the Food Center failed to turn over the referenced items to her has been waived.

[17] The Court notes that it is practically impossible to determine whether the dots on the copied timecards are actually staple marks, as there are other dots randomly located on the copy of the timecards filed with the Court. Curiously, Petitioner states that there are staple marks on the blank card, however, she does not identify any staple marks on the card with her name which, if the cards had been stapled together, would likely have identical staple marks. Even more disquieting is that one of the dots on the exhibit attached to Petitioner's reply brief that Hodge claims is a staple mark is not reflected on the copy of the timecard the DOL filed with the Court.

She testified about the incident on February 23, 2027, but when she was asked about her failure to punch her regular timecard the previous week—February 18, 2007— Hodge testified she "can't recall," but if she did so, she used tape to "tape it together."[18] The Court, therefore, finds that the ALJ findings are supported by substantial evidence.

¶24. Petitioner claims that the ALJ failed to consider relevant evidence offered by the Petitioner in support of her claim and "relied almost entirely on the evidence supplied by the employer to make its determination.[19] In his Memorandum Opinion and Order, the ALJ discussed Hodge's testimony at length. It is evident that the ALJ considered and weighed her testimony.[20] The record as a whole supports the ALJ's findings that Hodge was lawfully discharged for dishonesty under the VIWDA. Under the substantial evidence standard, the evidence at the hearing is what a reasonable mind might accept as adequate to support the conclusion that Hodge acted dishonestly.

### B. *Whether the ALJ Exhibited Bias During the DOL Hearing*

¶25. Hodge alleges that the ALJ exhibited bias while presiding at Hodge's wrongful discharge hearing and thus violated Hodge's due process rights to a fair hearing. Hodge waived any argument that the ALJ was biased. Any alleged bias or impartiality by the ALJ should have been addressed before the ALJ and before he issued his Memorandum Opinion and Order. "No objection that has not been urged before the Commissioner shall be considered by the Court unless the failure or neglect to urge such objection is excused because of extraordinary circumstances." 24 V.I.C. § 70. Thus, in the absence of "extraordinary circumstances," a party forfeits the right to

---

[18] Hr'g. Tr. 133:23-134:5

[19] Pet'r's Reply Brief at 7.

[20] ALJ's Memorandum Opinion and Order at 5-6.

raise on review that the ALJ was biased if no such objection was raised before the ALJ issued his

decision. Concomitantly, 24 V.I.R. & Regs. § 77-57 provides:

> A hearing Officer may withdraw from a proceeding *sua sponte* on the ground that the Hearing Officer is disqualified. Any party may move the Hearing Officer at any time following the Hearing Officer's designation and before filing of the recommended decision, to withdraw on grounds of personal bias or disqualification, by filing with the Hearing Officer promptly upon the discovery of the alleged facts a timely affidavit setting forth in detail the matters alleged to constitute grounds for disqualification. If, in the opinion of the Hearing Officer, such affidavit is filed with due diligence the Hearing Officer may forthwith withdraw from the proceedings. If the Hearing Officer does not withdraw, the grounds for the refusal to withdraw shall be stated in the record and the hearing will be continued, or if the hearing is closed, the Hearing Officer will proceed with issuance of the recommended decision in accordance with Section 77-44 hereof and state in the recommended decision the grounds for the refusal to withdraw.

24 V.I. & Regs. § 77-57.[21]

¶26.    Absent from the record is any evidence that Petitioner objected on grounds of bias before

the hearing, during the hearing, or any time before the filing of the ALJ's decision. Thus, Hodge

has waived her right to object to the ALJ decision on the premise that he exhibited bias towards

her. *Pichardo v. Benjamin*, 2008 V.I. Supreme LEXIS 25, *7 (V.I. 2008), *aff'd*, 613 F.3d 87, 53

V.I. 936 (3d Cir. 2010) ("only those issues raised before the ALJ are properly reviewable by the

Superior Court"); *Hard Rock Café v. Lee*, 54 V.I. 622, 631 (V.I. 2011) (holding that "in the

wrongful discharge context, that the Superior Court lacked jurisdiction to rule on the merits of an

issue that had not been raised before the DOL."); *see also Benjamin v. AIG Ins. Co. of P.R.*, 56

---

[21]Also, 4 V.I.C. § 284(4) provides that "no judge shall sit or act as such in any action or proceeding ... when it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him." The movant must allege facts "reflecting a clear probability that the judge is biased against the party." *Gov't of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974).

V.I. 558, 569 (V.I. 2012) (holding that where the appellant never made any motion seeking disqualification or recusal to the trial judge, the argument that the judge was biased during the proceeding below is waived before the appellate court).

¶27.    However, even if Petitioner did not waive her argument that the ALJ was biased or assuming extraordinary circumstances are present so as to permit the Petitioner to raise this argument for the first time on review, the ALJ's pattern of questioning the parties was not improper and did not reflect that the ALJ was biased against Hodge and favored Food Center. Petitioner has made generalized claims of bias and, in some instances, pointed to parts of the record that she claims reflect examples of bias. Generally, Hodge contends that the ALJ showed extreme bias by "forcefully" examining her, asking leading questions, advocating for Food Center, and generally exhibited a lack of fairness and objectivity in conducting the hearing.[22] Hodge further claims that the ALJ asked her "over sixty questions" of a probative nature, questioned Food Center about the merits of the case, interrupted her response to questions, provided leading answers, and was argumentative and intimidating towards the her.[23]

¶28.    To the contrary, the ALJ conducted the hearing with impartiality, ensuring fairness to all parties involved. The ALJ's duty is "to inquire fully into facts as to whether the Complainant has been wrongfully discharged within the meaning of the [VIWDA]." 24 V.I. R. & Regs. § 77-54. Specifically, the ALJ has the right "[t]o regulate the course of the hearing," "[t]o call, examine, and cross-examine witnesses," and "to introduce into the record documentary or other evidence." 24 V.I. R. & Regs. § 77-55.

---

[22] Pet'r's April 12, 2010 Brief, at 1-2.
[23] Pet'r's April 12. 2010 Brief at 5-6; February 3, 2012 Brief at 4-5.

¶29.    In *Simon*, the petitioner alleged that the ALJ demonstrated bias by "interrogating," "cross-examining," and "interrupting" him during the hearing. *Simon v. Transportation Sec. Admin.*, 2016 WL 11722931, *3 (V.I. Super. Ct. 2016). He also claimed that the ALJ exhibited bias by "challenging him, cutting him off, and failing to conduct himself as a trier of fact." *Id.* Citing the ALJ's rights as established by the applicable rules, the Superior Court in *Simon* held that the ALJ's pattern of questioning was not improper and did not reflect a clear probability that the ALJ was biased against the petitioner. *Id.* Similar to *Simon*, the ALJ in this case properly inquired into the allegations as his responsibilities set forth in the regulations demands. The ALJ fulfilled his duty by examining the witnesses, including Daas and Hodge`. The ALJ's questioning of the parties and the record as a whole does not show a clear indication that the ALJ was biased against Hodge.

¶30.    Hodge complains that the ALJ laid the foundation for Exhibit 5.[24] To the contrary, the record reflects that the ALJ sought to clarify the record by describing the document that was being submitted as Exhibit 5.[25] Additionally, Hodge argues that the ALJ improperly admitted Exhibit 5 even though she had never seen the exhibit. Although Hodge claims she had never seen Exhibit 5, it was patently evident that the information in Exhibit 5 was information that Hodge had provided to an employee at the DOL when she filed her wrongful termination complaint. It would have been highly improbable for a DOL employee to have known about the information in Exhibit 5

---

[24] Pet'r's April 12, 2010, Brief at 3 referencing Hr'g. Tr. 85:14-21.

[25] The transcript at page 85, lines 13-19, states as follows:
   THE HEARING OFFICER: Let the record reflect that Respondent's Exhibit No. 5 is a two-page exhibit which is typed, the first page bearing the caption complaint of unfair labor practice that have been ongoing towards me by the manager/owner of Frydenhoj Food Center since 2001 to 2007 and the second page of which - - which is signed in typed face Shirley Hodge.

without Hodge communicating it. In admitting Exhibit 5 over the Petitioner's objection, the ALJ noted that Exhibit 5 was a document in the agency file.

¶31. In *Simon*, supra, the petitioner argued that the ALJ abused his discretion by presenting to the petitioner at the hearing documentation that was unsigned and not authenticated by respondent as required by Fed. R. Evid. 901(a). The Court held that the ALJ did not abuse his discretion by examining the petitioner based, in part, on a document that was unsigned and unauthenticated by respondent. The Court explained that the Federal Rules of Evidence, which were the rules of evidence used in the Superior Court at that time, were not controlling in administrative hearings before the ALJ. Likewise, this Court finds that the ALJ properly admitted Exbibit 5 in exercising his authority to "rule upon offers of proof and receive relevant evidence."[26]

¶32. Hodge contends that the ALJ showed bias by disregarding her testimony. She also claims that the ALJ failed to consider crucial testimony and relevant exculpatory evidence she provided to support her claim. Specifically, she argues that he ignored her testimony regarding punching a blank card due to the absence of her assigned card.[27] As discussed above, the record does not support Hodge's claim that the ALJ failed to consider relevant evidence offered by her in support of her claim. In his Memorandum Opinion and Order, the ALJ discussed Hodge's testimony at length. It is evident that he considered and weighed her testimony.[28]

---

[26] 24 V.I. R. & Regs § 77-55(3). Also, 24 V.I. R. & Regs § 77-62 provides that hearings before the Commissioner or his designee "shall be conducted in such manner as to ascertain the substantial rights of the parties . . . [and], insofar as practicable, shall be governed by the rules of evidence applicable in the courts of the United States Virgin Islands."

[27] See April 6, 2009, Notice of Appeal.

[28] ALJ's Memorandum Opinion and Order at 5-6.

¶33. Hodge has identified some specific instances of alleged bias by the ALJ, which the Court will now address. Hodge claims that prior to the conclusion of the hearing, the ALJ did not allow for her direct examination by her representative, which denied her the opportunity to present her case.[29] The record shows that Food Center called Hodge as a witness and that Hodge's representative had the opportunity to cross-examine Hodge.[30] After Hodge's representative finished cross-examining Hodge, Food Center's attorney conducted a redirect examination. At the end of the redirect examination, the ALJ asked Hodge's representative if there was anything further, and her response was, "No, your Honor."[31] Again, after Food Center rested, the ALJ asked Hodge's representative, "Do you have any witnesses that you intend to call?" She responded, "No." The record is devoid of any statement by the Hearing Officer directing Hodge's representative not to call Hodge as a witness in her case. It is evident that Hodge's representative decided not to recall Hodge as a witness in light of her earlier testimony explaining what transpired before her termination and what she believed led to her termination. Hodge's claim that the ALJ denied her the opportunity to present her case lacks merit.

¶34. Petitioner, citing to specific instances in the record, claims that the "ALJ coached Respondent's counsel and the employer's witness, including providing counsel with overt and gentle reminders to bolster the employer's case." [32] Petitioner identified several specific instances in the record to support her position. During the proceeding, the ALJ stated:

> Before I swear the next witness, counsel, - - Attorney Hodge, are you going to move the administration of Respondent's Exhibits 1 and 2 at this time?[33]

---

[29] Pet'r's Reply Brief at 11.
[30] Hr'g. Tr. 114-126.
[31] Hr'g. Tr. 139:24-25.
[32] Pet'r's Reply Brief at 11.
[33] Hr'g. Tr. 49:4-6.

Petitioner also cites to the following colloquy:

> THE HEARING OFFICER: Ms. Blackman, is your question related to the questions that were just asked by counsel for respondent?
> MS. BLACKMAN: Yeah, but I was just linking where her station is, which she said before she's at the front and --
> THE HEARING OFFICER: Yeah, but that's already established.[34]

None of the instances above are examples of coaching or reflect an attempt by the ALJ to bolster the Respondent's case. The ALJ was simply carrying out his responsibility to manage the hearing and limit repetitive testimony.

¶35.    Petitioner next argues that the "ALJ interceded" the questioning of Petitioner so as to "stifle, chill and eliminate the presentation of the Petitioner's case."[35] Petitioner cites the dialogue above and discussion below regarding Exhibit 5. The purpose of the questioning was to find out whether Hodge had communicated the alleged eight instances of unfair labor practices listed in the document to a DOL employee. The discussion is as follows:

> THE HEARING OFFICER: Well, the question wasn't one about knowledge, but one about belief.
> MS. BLACKMAN: Well –
> THE HEARING OFFICER: The witness can answer the question.
> THE WITNESS: I can answer. I won't know because this is the first time I am seeing this. If I was the one –
> THE HEARING OFFICER: No, no, the question is if I recall correctly, do you believe that anyone at the Department of Labor will write that without your knowledge? Was that the question?
> MR. HODGE: That's correct.
> THE WITNESS: He will write it.
> THE HEARING OFFICER: The question is anyone employed at the Department of labor, Ma'am. Please focus on the question.
> THE WITNESS: I cannot recall. I don't know.[36]

---

[34] Hr'g. Tr. 143:18-25.
[35] Pet'r's Reply Brief at 11.
[36] Hr'g. Tr. 93:2-24.

Petitioner also cites to portions of the transcript outlined below to support her claim that the ALJ

disrupted her testimony, was argumentative, and intimidated her:

> Q. Wouldn't you normally, whenever you got – you were paid by any employer look at your check to be sure that the check represents the amount of money to which you were entitled?
> A. I agree. You do, but on the –
> THE HEARING OFFICER: That's the question.
> THE WITNESS: That's the question?
> MR. HODGE: Yeah.
> THE WITNESS: Okay.
> THE HEARING OFFICER: So your answer is yes, that you would look and make sure it is correct?
> THE WITNESS: Sometimes.[37]

Later in Hodge's testimony, the following exchange took place:

> THE HEARING OFFICER: Hold on counsel. The witness's response to your previous question was somehow nonresponsive. You asked if she knew any reason why the document would be in the file. Her response was that she could not recall. The question is do you – do you know of any reason why the document would be in the agency's file saying what it states?
> THE WITNESS: As I repeat myself --
> THE HEARING OFFICER: Your answer was I cannot recall.
> THE WITNESS: Yeah, because –
> THE HEARING OFFICER: There is nothing to recall; is do you – do you have any explanation as to why the document would be in the file?
> THE WITNESS: I really don't know. This is the first time I am seeing this document in front of me. No one showed it to me.
> THE HEARING OFFICER: So your answer would be no, you don't have any reason why it would be there? Is that it?
> THE WITNESS: I don't know. I don't know why it's there because, I don't -- the first time I seen this. I –
> THE HEARING OFFICER: I understand, but I am just saying in terms of providing an answer that response to the question, to say I do not recall to a question asking you as to the reason why a document would be in the file is a nonresponsive answer.
> THE WITNESS: I don't know.
> THE HEARING OFFICER: Okay. Very Well. Thank you.
> THE WITNESS: Okay.
> THE HEARING OFFICER: Go on, sir.[38]

---

[37] Hr'g. Tr. 84:18-85-5.
[38] Hr'g. Tr. 88:25-90-9.

No portion of the transcript supports Hodge's contentions. The Court finds that the questioning by the ALJ was appropriate to ensure that the record was clear, to ensure Petitioner's responses were responsive to the questions asked, and to determine the merit of the complaints of unfair labor practice that Hodge made to the Department of Labor. The ALJ was fulfilling his duty to thoroughly investigate the facts and oversee the hearing process. A hearing officer's finding that a witness is not credible is not a proper basis for accusing a hearing officer of bias. Moreover, a hearing officer's expression of exasperation, impatience, frustration, annoyance, and even anger do not establish impartiality or bias. *LPP Mortg., Ltd. v. Quetel*, 47 V.I. 62, 74 (V.I. Super. Ct. 2004) (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

## IV.    CONCLUSION

¶36.    Having reviewed the record as a whole, the Court affirms the ALJ's Memorandum Opinion and Order. The Court finds that the ALJ's findings of fact are supported by substantial evidence in the record. Even if the evidence could potentially support Petitioner's position as well, reversal of the ALJ's decision is not warranted as the  substantial evidence test allows for the possibility of drawing two inconsistent conclusions. The Court further finds that the ALJ properly exercised the powers granted to him by law and  Hodge's allegations of bias are unfounded. Hodge's mere disagreement with the ALJ's adverse ruling does not establish that the ALJ had a personal bias against her, nor does it provide a basis upon which to question the ALJ's impartiality. Accordingly, it is hereby

**ORDERED** that the March 13, 2009, Memorandum Opinion and Order of the Department

of Labor in *Shirley Hodge v. Daas, Inc. d/b/a Food Center,* (WD-044-2007-STT) is **AFFIRMED**;

and it is further

**ORDERED** that Petitioner's Petition is **DISMISSED WITH PREJUDICE;** and it is

further

**ORDERED** that copies of this Order shall be directed to counsels of record.

**Dated:** September 24, 2024

**Carol Thomas-Jacobs**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Donna Donovan
Court Clerk Supervisor 09 / 24 / 2024